Wexler, James H., J.
Plaintiffs appeal from an order, dated March 13, 2006 and entered by the Court on March 14, 2006 [21 Mass. L. Rptr. 37], denying plaintiffs summary judgment and granting summary judgment to the defendants. Plaintiffs Chris and Marcia Warrington (“Warringtons”) seek the court to alter or amend the granting of summary judgment for the defendants, or, in the alternative, to reconsider its Memorandum of Decision and Order on Summary Judgment. The Warringtons contend that the judgment disposed of the entire case even though only the issues of standing and a statute of limitations question were the subject of the summary judgment motion. The Warringtons assert that neither party moved for summary judgment on Count IV which alleges that the use of their property as abed and breakfast and dance studio were in compliance with the Town of Rutland’s by-laws. As a result, the Warringtons claim that they are entitled to a trial on the issue of whether they are permitted as a matter of right to continue to operate the bed and breakfast and dance studio under Count IV. The Defendants contend that the issue of whether the Warrington’s use of their home as a Bed and Breakfast is moot because the Rutland Planning Board granted them a Special Permit subsequent to this action.[4] The Defendants assert that the same is not the case for the dance studio, thus the Order of the Court should stand.[5] For the following reasons, *454 the plaintiffs’ motion to alter or amend judgment is DENIED in part and GRANTED in part.

BACKGROUND

The Warringtons are the owners of the property located at 344 Main Street, Rutland, Massachusetts. On June 5, 1995, the Warringtons submitted an Application for Plan Examination and Building Permit to the Town of Rutland. Plaintiffs intended to build a new structure and operate a dance studio out of it as a “home occupation” under the by-laws which restricted residential district uses, inter alia, to one- or two-family dwellings, farms, and customaiy home occupations. A dancing academy or a place of instruction was only permitted in business districts in Rutland pursuant to section 7 of the by-laws. On June 6, 1995, Rutland Building Inspector, Harry C. Johnson (“Johnson”), issued Building Permit #59 to the Warringtons to build a one-story bam structure to be used for “home occupation” at the premises.
During the period from June 1995 through September 1995, the building was constructed in accordance with the Building Permit. While under construction, Johnson received complaints from two town residents regarding the proposed use of the building as a dance studio. On August 7, 1995, Johnson notified the Warringtons that using the space as a dance studio was unlawful in a residential district absent a special permit. Despite this letter, after completing construction in September of 1995, the Warringtons operated a dance studio out of the building. They continued to use the building for this purpose from September 1995 through December 2004.
On October 12, 2004, Blair wrote to Johnson complaining that the Warringtons were using the property for commercial purposes, which were inconsistent with the by-laws, and requesting that Johnson order the cessation of all business activities on the Warrington’s property. In response, on October 14, 2004, Johnson notified Blair by letter that he would not initiate legal proceedings to stop the Warringtons from using the property for these purposes. However, Johnson did acknowledge that such uses were unlawful under the by-laws, that the Warringtons had notice of that, and that Blair could appeal Johnson’s decision as Building Inspector to the Board.
On October 15, 2004, Blair filed a Notice of Appeal with the Town of Rutland requesting zoning enforcement. A hearing was held on December 1, 2004 on Blair’s Notice of Appeal. On December 15, 2004, the Zoning Board of Appeals voted in favor of Blair’s appeal and issued a Cease and Desist Order to the Warringtons to “cease all commercial use” of the premises. The Warringtons brought action pursuant to G.L.c. 40A, §17 seeking to annul the decision of the Town of Rutland Zoning Board of Appeals. The Warrington’s motion for summary judgment was denied on March 13, 2006, and this motion arises as a result of that denial. For the reasons discussed below, the plaintiffs’ motion to alter or amend judgment is DENIED in regards to the jurisdictional defect and statute of limitations issues; however, the granting of summary judgment for the defendants in regard to Count IV of the original complaint is VACATED.

DISCUSSION

I. JURISDICTIONAL DEFECT

In their complaint, the Warringtons assert that after the Building Inspector refused to take action against them, the Board had no jurisdiction to hear Blair’s appeal under G.L.c. 40A, §7 because he was not a “person aggrieved” under the statute. The court found that this alleged jurisdictional defect was waived because it was not timely objected to. The court relied on Hogan v. Hayes, 19 Mass.App.Ct. 399, 402-03 (1985), which held that the failure of a Building Inspector to issue a decision in response to a request to enforce the by-laws was a defect that:
[although it may be spoken of as ‘jurisdictional," appears not to be of such significance that a court must take notice of it even if the opposing party fails to press it . . .; rather, like a defect of “personal” jurisdiction, it may be overlooked if not timely objected to.
19 Mass.App.Ct. at 402-03. The Warringtons claim that such a waiver is limited to the specific scenario in Hogan and that it does not extend to the lack of standing that they allege. The Warringtons assert the same regarding Worcester County Christian Community, Inc. v. Board of Appeals of Spencer, 22 Mass.App.Ct. 83 (1986), in which the court held that a board’s assertion of want of jurisdiction was waived because the issue was not timely asserted.
In addition to asserting that the court relied too expansively on Hogan and Worcester County, the Warringtons contend that Marotta v. Bd. of Appeals of Revere, 336 Mass. 199 (1957) is controlling. In Marotta, the Supreme Judicial Court held that the Superior Court had no jurisdiction to hear an appeal regarding a variance unless the appeal was made by an aggrieved person. 336 Mass. at 202-03. The court in Marotta further states that “[ijt is immaterial that the point was not raised in the answers or before the Superior Court.” Id. The Warringtons contend that this negates the requirement of a timely objection, and therefore, Blair’s lack of standing as an aggrieved person would result in the Board of Appeals not being able to reach the merits of the appeal.
However, in stating that, “[i]t is immaterial that the point was not raised in the answers or before the Superior Court,” the court relies on the holdings of cases which involve appeals from a variety of origins. Id. at 203; see Carey v. Planning Board of Revere, 335 Mass. 740, 744-45 (1957) (appeal arising from a local planning board); see also First Christian Church v. Brownell, 332 Mass. 143, 148 (appeal arising from a Probate Court); see also Assessors of Boston v. Suffolk Law School, 295 Mass. 489, 495 (appeal arising from *455 a board of tax assessors). The court in Marotta also states that “[t]he words ‘person aggrieved’ in such statutes as c. 40A, §21, are not to be narrowly construed.” Id. at 204. The call for a broader interpretation of “persons aggrieved” in Marotta along with the holdings in Hogan and Worcester County, finding that such jurisdictional issues may be waived if not timely objected to, support the finding of this court that the Warringtons failed to timely object to Blair’s standing. As such, the Warrington’s jurisdictional challenge cannot stand.

II. LIMITATIONS PERIOD

The Warringtons assert that they are protected by the six-year limitation period under G.L.c. 40A, §7, which states in relevant part that:
[I]f real property has been improved and used in accordance with the terms of the original building permit. . ., no action, criminal or civil, the effect or purpose of which is to compel the abandonment, limitation or modification of the use allowed by said permit or the removal, alteration or relocation of any structure erected in reliance upon said permit by reason of any alleged violation of the provisions of this chapter, or of any ordinance or by-law adopted thereunder, shall be maintained, unless such action, suit or proceeding is commenced.. . within six years next after the commencement of the alleged violation of law.
G.L.c. 40A, §7. (Emphasis added.) The Warringtons claim that the initial permit issued on June 6, 1995, to build a “bam” to be used for “home occupation” purposes protects them in the use of the premises as a dance studio. The Warringtons attempt to distinguish two cases relied on by the court, Bruno and Moréis, by asserting that because the town knew that the Warringtons were contemplating a dance studio when they applied for the permit that they are immune from any enforcement action.
In Moreis v. Oak Bluffs Bd. of Appeals, 62 Mass.App.Ct. 53, 59-61 (2004), the court held against a landowner whose non-conforming commercial use of the property was challenged forty years after the original permit was issued because he failed to prove that the particular uses he sought to protect were authorized by any prior permits. The Warringtons assert that Moréis is distinguishable because the court in that case found that there was scant evidence “as to the exiting use, proposed changes, or other activity to be accomplished within the contemplation of the permits.” Moreis, 62 Mass.App.Ct. at 58. In contrast, the Warringtons allege that the town knew that they intended to operate a dance studio based on their permit application.
The Warringtons are essentially asserting that that town should have assumed that granting the Warringtons a permit for a “bam” to be used for a “home occupation” would lead them to infer that the building inspector’s letter telling them that use as a dance studio was unlawful became null and void. The permit is for a “barn” to be used for a “home occupation.” Neither this permit nor the certificate of occupancy are sufficient to render the dance studio immune from enforcement.
The Warringtons also address the court’s use of Bruno v. Bd. of Appeals of Wrentham, 62 Mass.App.Ct. 527 (2004), attempting to distinguish “immuniiy from enforcement” from “converting an initially unlawful use to a lawful use.” In Bruno, the Appeals Court affirmed the denial of a certificate of occupancy for a commercial truck maintenance facility that failed to comply with the city’s zoning by-laws. 62 Mass.App.Ct. at 527. The commercial tenants of the property in question operated a truck maintenance facility for over ten years without ever having obtained a special permit as required by the zoning by-law. Id. at 528. Rather they operated under the apparent authority of an original building permit. Id. When the building inspector denied a prospective tenant’s application for a certificate of occupancy, the land owners and tenants appealed, arguing that their use constitutes a protected prior nonconforming use under G.L.c. 40A, §6. Id. at 530. The Appeals Court found that the use of the property was never lawful and, therefore, not protected by G.L.c. 40A, §6 which only exempts lawfully existing uses from the application of subsequently enacted zoning regulations. Id. at 531.
The Warringtons state that they “are not claiming that §7 converts a non-conforming use to a conforming use.” Rather, the Warringtons simply assert that §7 protects them from the enforcement action taken by the town 9 years after the dance studio use was commenced. (Warringtons’ Motion to Alter or Amend, 8, April 5, 2006.) They state further that they are simply “immune from enforcement action” relying on the distinction made in Bruno. (Id.) However, the Warrington’s efforts to align their situation with that in Bruno misses the point. The issue here is not that the Warrington’s use is nonconforming, but rather that it is unlawful. Thus, this court follows the court in Bruno: “we decline to construe the expiration of the six-year limitation period set out in §7 as converting an initially unlawful use to a lawful use.” Bruno, 62 Mass.App.Ct. at 536.
Finally, the Warringtons claim that the case at bar is similar to Garabedian v. Westland, 59 Mass.App.Ct. 427 (2003), in which the Appeals Court addressed among other issues the status of a hangar built in a residential zoning district 12 years before the neighbors complained and asked the building inspector to enforce the zoning law by requiring removal of the hangar. The Appeals Court affirmed the trial judge’s finding that the challenge to the hangar was barred by the six-year limitations period in G.L.c. 40A, §7 because the challengers knew about the use of the structure. Id. The Warringtons liken this to their situ *456 ation, claiming that the town knew of their intended use for the “barn.” However, as discussed above, once a building inspector informs owners that a use is unlawful, the town is under no obligation to assume that a structure that is built will be used in the owner’s originally intended, but unlawful, manner. Furthermore, in Garabedian, the court indicates that the town had means of knowing what the “bam”[6] was being used for, even if the term “barn” on the permit was misleading: “(c]ertainly the taking off and landing of airplanes, which preceded and followed construction of the hangar, served notice to the neighbors what permission had been granted, even without reference to documents on file at town hall.” Garabedian, 59 Mass.App.Ct. at 437. In the case at bar, the town knew that the Warringtons originally wanted to use the bam as a dance studio. Once that use was declared unlawful, the town had no reason to know that the Warringtons went ahead and operated a dance studio in spite of its unlawfulness.
The same reasoning that defeats the Warrington’s limitations period claim (Count II of their Complaint) similarly defeats their laches claim (Count III of their Complaint). As stated in the court’s decision dated March 13, 2006, any reliance on laches for equitable relief is misplaced because the Warringtons knew the use of the premises was unlawful. See Moreis, 62 Mass.App.Ct. at 60; see also Bruno, 62 Mass.App.Ct. at 537.

III. COUNT TV

The Warringtons claim that the court has incorrectly disposed of the entire case because there were only two issues before the court on their Motion for Summary Judgment. The Warringtons state that they did not move for Summary Judgment on Count IV of their complaint and neither did the defendants. Count IV asserts that the use of their property as a Bed and Breakfast and as a dance studio were in compliance with Rutland’s by-laws. Regarding the Bed and Breakfast, the Defendants claim that this issue is moot because the Warringtons were granted a special permit for a Major Home Occupation as a Bed and Breakfast.[7] The record before the court also reflects that the Town of Rutland Planning Board granted the Warringtons a Special Permit for the use of the premises as a dance studio. Blair appealed both of these decisions to the Land Court on May 12, 2005. The Warringtons assert that they are entitled to a trial on the issue of whether they are permitted as a matter of right to continue to operate a Bed and Breakfast and dance studio under Count IV of the Complaint. The defendants contend that the Court’s Order should stand and that the Warringtons have had a full and fair opportunity to be heard on all of the issues in this action. The record before the court reflects that Special Permits have been issued and appeals have been filed. In light of the continued litigation of these issues, the court VACATES the decision of March 13, 2006 granting of summary judgment to defendants regarding Count IV of the original complaint.

ORDER

For the reasons discussed ‘above, the plaintiffs’ motion to alter or amend judgment is DENIED in regards to the jurisdictional defect and statute of limitations issues; however, the granting of summary judgment for the defendants in regard to Count IV is VACATED.

The Warringtons argue that the issue is not moot because Blair appealed the Board’s granting of the Special Permit.

The record before the court reflects that the Town of Rutland Planning Board voted to grant a Special Permit on April 12, 2005 and issued a decision dated April 14, 2005 granting the Warringtons a Special Permit for the use of the premises as a dance studio. Blair also appealed this decision to the Land Court on May 12, 2005.

The permit states “bam” and not “hangar” per the building inspector’s instruction.

“A case is moot when the parties no longer have a stake in the determination of the issues presented, First Natl. Bank of Boston v. Haufler, 377 Mass. 209, 211 (1979), when the dispute has become hypothetical, or when it does not involve an actual controversy, see Sullivan v. Secretary of the Commonwealth, 233 Mass. 543, 546 (1919).” Elliot v. Building Inspector of Bridgewater, 60 Mass.App.Ct. 1114 (2004). Massachusetts Courts have recognized that when subsequent final zoning relief is granted, the underlying issues (about compliance and permit decisions) are made moot. See Ranney v. Board of Appeals of Nantucket 11 Mass.App.Ct. 112 (1981).