HIGBY/FULTON VINEYARD, LLC vs. BOARD OF HEALTH OF
TISBURY & another.[1]

No. 06-P-1810.

Dukes. September 11, 2007. - December 14, 2007.

Present: MILLS, BROWN, & TRAINOR, JJ.

*Practice, Civil,* Action in nature of certiorari, Standing. *Health, Board of. Municipal Corporations,* Board of health. *Sewage Disposal.*

In an action in the nature of certiorari, seeking review of the decision of a town's board of health to issue a construction permit to an individual who proposed to build a three-bedroom home on a parcel of land that had frontage on a pond, the judge properly dismissed the complaint for lack of standing, where the plaintiff, a direct abutter of the property at issue, had interests in the quality of the water from the pond that were private and specific to it, but did not put forward evidence to show actual, substantial injury to the quality of the water in the pond. [850-852]

CIVIL ACTION commenced in the Superior Court Department on December 14, 2005.

The case was heard by *Judith Fabricant,* J., on motions for judgment on the pleadings.

*Thomas B. Bracken* for the plaintiff.

*Michael D. Vhay* for Hubert E. Knipmeyer.

MILLS, J. The plaintiff's action is in the nature of certiorari, G. L. c. 249, § 4, seeking review of a decision of the board of health (board) of the town of Tisbury to issue a septic disposal system construction permit to Hubert E. Knipmeyer, who proposed to build a three-bedroom home on a parcel of land in Tisbury. A judge of the Superior Court dismissed the complaint for lack of the plaintiff's standing. We affirm.

1. *Background.* Knipmeyer's lot and the plaintiff's lot have

[1]Hubert E. Knipmeyer, individually and as trustee under a declaration of trust dated February 18, 1994.

frontage on Mink Meadows Pond and are part of the same sub-division. A professional land surveyor filed Knipmeyer's permit application, which included multiple pages of submissions, technical data, and other documents and plans with the board. The record shows (and the parties are in general agreement) that the board considered the Knipmeyer application and sub-sequent submissions at public meetings or hearings, that the Department of Environmental Protection (department) reviewed the application and various documents and essentially approved the proposed septic system, and that Knipmeyer, through profes-sionals, furnished satisfactory supplemental information that the department, the board, and the board's health agent deemed necessary or appropriate. The application was filed on May 10, 2005, and the board's review process continued for more than six months, to November 15, 2005, when the board voted to ap-prove the application.

The plaintiff's lot directly abuts the lot owned by Knipmeyer. The plaintiff alleges in the complaint that its owners and their families "use and enjoy the beaches, ponds, open spaces and other common areas in the [subdivision], including the beach on the Vineyard Sound and [the pond]." When asked in interrogatories to detail the ways in which the plaintiff expected to be harmed by the board's decision, the plaintiff responded by referring to the opinion of its expert, Arlene Wilson, a land use planner and abut-ment specialist. The plaintiff summarized Wilson's views by stat-ing, in its answers to interrogatories, that the proposed septic system raises "four principal areas of concern," which we set forth in the margin.[2]

The judge noted that Wilson elaborated on her views during a

[2] (1) "Increased nitrogen loading in the pond, which would reduce the water quality of the pond water and increase the growth of phrag-mites";

(2) "Increased phosphorus levels in the pond which could enhance the growth of phragmites";

(3) "Virus infection which would be harmful if ingested by contact with polluted water either orally or through skin cuts, especially to children and pets, to include such serious diseases as hepatitis and polio"; and

(4) "Risk of deleterious toxic substances (for instance, petroleum distil-lates such as cleaning fluid, kerosene, gasoline, charcoal starter fluid,

deposition, where she testified that the proposed septic system "has the potential to increase nitrogen loading to the adjacent pond," and that it "has the likelihood to increase phosphorous loads." The judge further observed that while Wilson explained that increased nitrogen would promote the growth of phragmites, she was unable to state by how much the proposed septic system would increase this growth, testifying that she had not "done any calculations within that." In addition, the judge noted that Wilson testified that if someone in Knipmeyer's proposed home were ill with an enteric virus, "there's a possibility for transmission of disease" through viral cysts transmitted from the septic system to the groundwater and then to the pond. Finally, she testified to the possibility of pollution of groundwater and adjacent surface water if users of the proposed home were to put deleterious materials into the septic system. On appeal, the plaintiff argues that as an abutter it is entitled to presumptive standing, and that, regardless, it has made a sufficient showing of injury to survive the motion to dismiss.

2. *Discussion.* We hold that the plaintiff's status as a direct abutter does not create a rebuttable presumption of standing, relying upon the authorities and reasoning in *Friedman* v. *Conservation Commn. of Edgartown*, 62 Mass. App. Ct. 539, 542-545 (2004). Compare *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996); *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 27-28 (2006); *Jepson* v. *Zoning Bd. of Appeals of Ipswich*, 450 Mass. 81, 87-89 (2007). Certiorari review of this board decision may only be available if the plaintiff makes a requisite showing of a reasonable likelihood that it has suffered injury to a protected legal right. See *Friedman* v. *Conservation Commn. of Edgartown, supra* at 543.

In *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 134-135 (2000), the dispositive question was whether the plaintiffs had demonstrated that they had standing to maintain an action under G. L. c. 231A. After iterating certain "terms used to define a plaintiff's standing — [e.g.,] 'injury within the area of

etc.) being introduced into the non-conforming septic system and thence into the pond."

concern'; 'definite interest in the matters in contention'; 'violation of duty owed,' " — the court noted them as "elastic concepts that have different meanings for different parties." *Id.* at 135. The court then instructed that,

> "[i]n the final analysis, we must decide whether standing exists by examining several considerations, including the language of the statute in issue; the Legislature's intent and purpose in enacting the statute; the nature of the administrative scheme; decisions on standing; any adverse effects that might occur, if standing is recognized; and the availability of other, more definite, remedies to the plaintiffs. In making our inquiry, we pay special attention to the requirement that standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs."

*Id.* at 135-136. We read *Enos* in combination with "the general rule that resort cannot be had to certiorari unless the action of the tribunal of which a review is sought has resulted in substantial injury or manifest injustice to the petitioner." *Fiske* v. *Selectmen of Hopkinton*, 354 Mass. 269, 271 (1968), quoting from *North Shore Corp.* v. *Selectmen of Topsfield*, 322 Mass. 413, 418 (1948).

The judge properly noted that the plaintiff, as an abutter to the pond, has interests in the quality of its water that are private and specific to it, going beyond the interest of the general public. But the judge also correctly focused on the question whether the plaintiff had put forward evidence to show actual, substantial injury to the quality of the water in the pond. The judge then carefully examined the evidence offered by the plaintiff, principally the expert opinion of Arlene Wilson. The judge noted that the opinion was stated in terms of "potential," "likelihood . . . over time," and "possibility." The judge noted that the expert, having done no calculations or testing, was unable to express any opinion more specific or definitive than these references to potential, likelihood, and possibility. The judge concluded that on the basis of the plaintiff's allegations, and with due regard for Wilson's expert opinion, the plaintiff's claims of injury with respect to the interests that the board's regulations protect rested, in substance, on speculation and that such claims

did not provide standing to petition for certiorari review. See *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 440-442 (2005).

There was no error. The judge's analysis of the evidence, and her order of dismissal, were made with the backdrop of the fundamental principles of certiorari review, including its purpose "to correct substantial errors of law apparent on the record adversely affecting material rights." *Police Commr. of Boston* v. *Robinson*, 47 Mass. App. Ct. 767, 770 (1999), quoting from *MacHenry* v. *Civil Serv. Commn.*, 40 Mass. App. Ct. 632, 634 (1996). The words "substantial error of law . . . which adversely affects a material right" are frequently repeated and emphasized in our cases. See, e.g., *Massachusetts Bay Transp. Authy.* v. *Auditor of the Commonwealth*, 430 Mass. 783, 790 (2000); *Teamsters Joint Council No. 10* v. *Director of the Dept. of Labor & Workforce Dev.*, 447 Mass. 100, 106 (2006); *Durbin* v. *Selectmen of Kingston*, 62 Mass. App. Ct. 1, 5 (2004).

In addition to the speculative nature of the plaintiff's showing, we are also mindful of the substantial study and review undertaken by the board in this matter prior to its vote, as reflected in the various components of the administrative record.

The judge properly dismissed the plaintiff's complaint.[3]

*Judgment affirmed.*

*Order denying motion for reconsideration affirmed.*

---

[3]The plaintiffs complained that Knipmeyer's motion pursuant to Mass.R. Civ.P. 12(b)(1), 365 Mass. 755 (1974), was untimely. We agree with the judge that the plaintiffs' standing is jurisdictional and may be raised at any time. See Mass.R.Civ.P. 12(h)(3), 365 Mass. 757 (1974); *Litton Bus. Sys., Inc.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981).

Finally, the plaintiff argued that the judge erred "in giving no weight to [a] prior ruling of [the Superior Court] in a related case that [it] [has] standing to intervene." That case was Knipmeyer's appeal of the local conservation commission's decision denying him certain authorizations necessary for his proposed construction because of allegedly adverse impacts on wetlands interests. The ruling of a judge in the other action has no precedential value for the standing issue in this case. *Friedman* v. *Conservation Commn. of Edgartown*, 62 Mass. App. Ct. at 543. Additionally, the weight that a judge gives to certain evidence, presuming for the sake of argument that it is relevant evidence, is ordinarily, and in this case, a matter within the judge's discretion. See, e.g., *Krasne* v. *Tedeschi & Grasso*, 436 Mass. 103, 105 (2002).